May it please the Court, good morning. My name is Jennifer Simon, and I represent the Appellants International Union of Elevator Constructors and its local Union 33 from Des Moines. This case is a suit to vacate and a counterclaim to confirm an award issued by a labor arbitrator under a collective bargaining agreement. This Court should reverse the decision below and confirm the arbitrator's award. The District Court erred when it found that the arbitrator ignored critical or essential contract terms. Therefore, the decision should not have been vacated. This Court should also decline Kone's invitation to decide its alternative arguments for vacatur, none of which were relied upon by the District Court. The issue before the arbitrator in this case is who is entitled to get travel time and expenses under the party's agreement. It is not who is in the employ of the employers. It is not who is in the bargaining unit. It is whether the party's contractually bargained language providing travel time and travel expenses applies to the circumstances of this dispute. The specific dispute in this case involves Alex Thompson, a brand new apprentice in the elevator industry who was hired by Kone under the party's collectively bargained hiring process. So he was hired prior to being sent? The arbitrator found that he was hired, Your Honor. He was a new hire of Kone. The arbitrator did not find that he was in the employ of Kone. The arbitrator found that regardless of whether he was or was not, he was entitled to travel time and travel expenses. Who directed his travel? Kone directed his travel, Your Honor. A supervisor from Kone directed Alex Thompson on a Friday afternoon to go to Kone's offices to leave his home base in Rapid City, South Dakota and to go to Kone's offices in Des Moines, Iowa and to be there at 7 a.m. on Monday morning. The question for the arbitrator was whether Mr. Thompson was eligible to receive travel time and expenses under the party's agreement for that trip. The District Court lost sight of that question when it focused its entire analysis on whether the arbitrator considered the phrase in the employ of the employers. That language defines the bargaining unit, but the grievance before the arbitrator was not who was in the bargaining unit or who was an employee. Rather, the issue before the arbitrator was whether Mr. Thompson could receive travel time and expenses under the agreement. To decide that question, the arbitrator had to decide whether Mr. Thompson was entitled to this benefit regardless of whether he was in the bargaining unit when he this kind of an issue had arisen with a new hire. It seems like this would have been an issue that there would not be a lot of confusion about. No, Your Honor. This is not the first time that this arose and in fact the parties put on significant evidence regarding past practice before the arbitrator. The arbitrator found that the language of the agreement was unambiguous and therefore did not consider the past practice. This kind of situation occurs all the time. What did the past practice indicate? The past practice indicated in the union's view unequivocally that Kone pays the travel time and travel expenses under circumstances identical to this case. But the arbitrator again found that because the language of the agreement was unambiguous, specifically Article 13, paragraph 1 of the agreement, he did not need to consider past practice. Therefore, he relied on the language of the agreement. The district court focused its entire analysis on whether the arbitrator considered the phrase in the employ of the employers. Again, that language defines the bargaining unit, but the question before the arbitrator was not who was in the bargaining unit. Thus, the district court fundamentally erred when it vacated the arbitrator's decision on the basis that he failed to appropriately consider contract language that defines bargaining unit. The arbitrator didn't duck the issue of who was in the employ of the employers. In fact, the definition of the bargaining unit was irrelevant to the ultimate question the arbitrator was asked to decide. There's a mountain of authority in the Eighth Circuit and the Supreme Court that arbitration awards are to be vacated only in the narrowest of circumstances. An arbitrator's award must be confirmed as long as the arbitrator was even arguably construing the contract and acting within the scope of his authority. In making his interpretation, the arbitrator is obliged to construe agreements as a whole with the terms read in the context of the entire agreement. Well, is that kind of the position of the district court that it wasn't read as a whole when you excerpt a phrase that that may have significant meaning? The district court erroneously conflated and confused the contractor with the definition of bargaining unit. The district court looked at in the employ of the employers, which defines the bargaining unit, which is the again an issue that not before this arbitrator. The issue before the arbitrator, jointly stipulated by the parties, was whether Kone failed to pay travel time and mileage in accordance with the collective bargaining agreement and the local expense agreement. And the arbitrator conducted a reasoned analysis of the parties placed before him. He first looked at Article 13, Paragraph 1, traveling time and expense. And that provision reads, and I'm not going to quote the entire thing, but the essential part of the provision is that when elevator constructors are sent outside the secondary jurisdiction, which in this case means at least 30 or 40 miles away from their home base, travel time shall be paid under the agreement. And the expenses incurred will be paid in accordance with the local expense agreement. And the arbitrator decided that the critical terms were sent and elevator constructor. For sent, he used the dictionary definition of the term and he determined that Kone sent Mr. Thompson when he was told to report to from his home base in Rapid City to Des Moines, Iowa. Then the arbitrator looked at the definition of elevator constructor to see whether Mr. Thompson was an elevator constructor at the time he was sent. And he did so in part because Kone argued to him, as it argues to this court, that Mr. Thompson was an applicant apprentice who had never worked in the industry and could therefore not be considered an elevator constructor at all. So he considered the relevant contract language regarding the definition of elevator constructor and applied it to the circumstance of this case. And under Article 2, Paragraph 1, the definition of elevator constructor is mechanics, apprentices, helpers, and assistant mechanics, collectively elevator constructors. That is the definition of elevator constructors. The sentence goes on to discuss the definition of the bargaining unit, but the definition of elevator constructors is those for job classifications. And in the circumstance of this case, Mr. Thompson was engaged in the of the agreement. He was on a ranked applicant list waiting for employment. He was then referred from that list to Kone, and Kone dispatched him from Rapid City to Des Moines. And the arbitrator looked at Article 22, Paragraph 2, and found that when people are referred and dispatched from the ranked applicant list in precisely the way that Alex Thompson was, they are referred to under that relevant contract language as applied to the facts of the dispute presented to him, Alex Thompson was considered an apprentice when he was sent on a 600-mile trip by Kone to start his employment. Therefore, he was an elevator constructor. Therefore, he was entitled to travel time under Article 13, Paragraph 1 of the agreement, and also to expenses under the local expense agreement. So the union reads the words in the employee of the employers in that Article 2 to define the scope of the bargaining unit? That's correct. So would this fellow have been outside of the bargaining unit at the time he traveled? The arbitrator found that it did not matter whether or not Mr. Thompson was in the bargaining unit at the time that he traveled. Right, but I mean in the union's reading, he would be an apprentice but outside the bargaining unit, is that right? That's correct, Your Honor. That's the union's reading, okay. Yes, the union has argued at all times before the arbitrator, before the district court, and before this court, that whether or not Mr. Thompson was in the employee of the company at the time that he was sent on this trip, the provisions of Article 13, Paragraph 1, still apply to him. And the district court's decision based on vacating this award is based entirely on this failure to consider the phrase in the employee of the employers, and that is immediately after the definition of elevator constructors. The district court wrongly concluded that this phrase is part of the definition of elevator constructors. It's not. That's why it's not necessary for the arbitrator to consider. Instead, the phrase in the employee of the employers is itself a fragment of a sentence which, when read as a whole, defines the bargaining unit, and that sentence is the recognition clause of the agreement. And the bargaining unit sets the floor, the minimum, for the people covered under the agreement. It describes a certain group of current employees of the employer that the union is required by statute to represent, and the employers are to recognize as represented. And the recognition clause of this agreement defines the bargaining unit as elevator constructors in the employee of the employers. So the district court's fundamental error here is its incorrect conclusion that the phrase in the employee of the employers is part of the definition of elevator constructors. It's not. Is that the fundamental error or is the fundamental error? I thought you're, I'm not taking a position on whether there was a fundamental error, but I thought your argument was that the district court shouldn't have even been offering its best interpretation of the agreement. Not that it necessarily got it right or wrong, but just that the arbitrator is entitled to, or not, let me rephrase it. The argument I thought was that the parties bargained for the arbitrator's interpretation, and that should be the end of the case. The parties did bargain for the arbitrator's interpretation of the agreement, and that should be the end of the case. The district court had no role substituting its judgment and its interpretation of the case for the arbitrator's interpretation. However, the district court based its decision, according to its opinion, on this idea that the arbitrator ignored essential or fundamental contract language. I don't know if the district court, as I read it, tell me what you think of this. I'm not sure the district court really took a final position on what in the employer the employers meant. I thought she said, well, it could have meant that he could have meant this, he could have meant that. The problem is that he didn't even address it, and she thought the failure even to address the language meant that the case had to be sent back to the arbitrator. Isn't that the substance of it? Your Honor, the district court actually found, specifically at joint appendix 339, 341, and 342, that this phrase was part of the definition of elevator constructors. Okay. So the district court did substitute its interpretation for the arbitrator's interpretation. Where, 339 you say? 339, 341, and 342. All right. Well, we'll look at that. The district court found that the arbitrator had ignored essential or probative contract language, and that for the reasons stated, he did not. I see that I'm into my rebuttal time, so unless you have further questions, I'll reserve the rest of my time. Thank you, Ms. Simon. Mr. Copeland? May it please the court. My name is Timothy Copeland. I represent National Elevator Bargaining Association and KONE Incorporated, which is a member of that organization. Your Honors, here's the problem with this arbitration decision. After writing that the dispute turned on the meaning of two terms, what he described as dispositive terms, the arbitrator wrote that he would look to Article 2 of the labor agreement for the definition of one of those terms, elevator constructor. That was the right place to go, but the arbitrator changed the quoted language by removing the words, in the employ of the employers. He did not have authority to do that, and in fact, was specifically prohibited from subtracting from or modifying the agreement. That makes this decision subject to vacature by the courts. So why is Thompson, when essentially hired by a KONE employee or officer and then sent to do work for KONE, why are they not KONE employees or in KONE's employ? I don't agree, Your Honor, that the arbitrator found that Mr. Thompson was hired on the Friday before he was traveled, that was before he traveled to Des Moines. That was certainly the union's position during the hearing. Our position was that the supervisor said, if you want this job, be in the office for an interview on Monday. The arbitrator didn't find either way on that issue, and that was the problem. He said it didn't matter whether he was hired on Friday or Monday, that he was an elevator constructor who was entitled. It would matter quite a bit if you've got somebody being sent to go do work or someone being sent to go see if they can be hired. A lot of people travel for a job interview and don't get paid unless they're actually hired, and that was the thrust of the dispute there was whether, and the union contended that, no, this is the way hiring is done in the upper Midwest. When the supervisor, when the union refers somebody to a supervisor, and the supervisor is on the phone with them and says, be in the office on Monday, he was hired. That's not what the company contended happened. Now, if the arbitrator had found in the union's favor on that factual issue, although I would have considered that to be improvident fact-finding, we probably wouldn't be here. So you're saying we have no fact-finding at all as to whether Thompson was an employee before leaving? The arbitrator did not make such a finding, no. Everybody agrees that Thompson became an employee at some point, and I think it's fair to say that both parties going into the arbitration hearing thought this was going to be a fact dispute about exactly when he became an employee, but the arbitrator took it in a completely different direction. He said, essentially, it doesn't matter because, in his view, the case rose or fall on the definition of this dispositive term, elevator constructor. Aren't you just quarreling with his interpretation of paragraph one of article two? You're saying he got it wrong and misread that definition to exclude in the employee the employers. Interpretation suggests that the arbitrator actually considered all of the relevant text. Interpretation is not redacting and misquoting the text and then giving meaning to the part that he did quote. Well, how do we know that he just overlooked it, and how do we know he wasn't making a substantive decision that the definition he quoted was the complete definition? Because he didn't say that he considered that language. He may have just overlooked it, but that needs to be apparent from the words that go down on the page, on the pages that the arbitrator wrote. That the arbitrator has to spell out in that kind of detail. Somewhat ironically, Your Honor, I would suggest that it's one of the decisions that the union cites too liberally in its papers, the Alcan packaging case, where the court was confronted with an argument that the arbitrator had failed to consider relevant contract language. And what it wrote was, this decision, and I'm quoting here, contains the hallmarks of an honest judgment that drew its essence from the agreement. Or in another case that the union cites, PSC Custom. This was a case where one provision of the contract said, employees may only be fired for just cause. And another provision that said, insubordination is grounds for discharge. An arbitrator held that even though he found that the employee had been insubordinate, that the employer's decision to fire the person should be overturned under that just cause language. The court upheld that decision because it said it was clear that the arbitrator was actually looking at both of those provisions, which were discordant and needed to be harmonized. And his interpretation that the just cause standard still applied was one reasonable interpretation of the relevant contract language. Even though the court might have interpreted and harmonized those two provisions differently, it said, it's clear to us from looking at what the arbitrator wrote that he was actually interpreting the contract language. Not redacting it, not wholly omitting it, as the district court noted that the arbitrator did here, but interpreting it. And in our view, there's really no reasonable dispute that this could consider the meaning of the words in the employee of the employers. And I say that because there is absolutely nothing in the decision that indicates that he considered this clause. He has a section of his decision in which he quotes relevant contract language. Article two isn't there at all. In the one and only place in his decision where he purported to quote to article two, he misquoted it and left out this clause. It's demonstrated in the district court's decision in a side-by-side comparison of the actual contract language with the arbitrator's rendition. He purported to quote the definition of elevator constructor, but he omitted those six words. And those words have meaning. Well, why isn't when he says the elevator constructors is defined and he lists it, why isn't that his decision that in the employee of the employers is not part of the definition? Because the only way he could get there was by subtracting contract language, which he has specifically prohibited from doing. Well, that's because you think the employee of the employers is part of the definition. That's correct. But the arbitrator didn't agree with that, apparently, because the arbitrator didn't include those words in the definition. But why isn't that a decision that you're stuck with because you agreed to arbitration? Well, respectfully, I can't agree that he apparently didn't agree with my interpretation of those words. Why not? They're missing from the decision. And there's no indication in this decision that he considered them at all. He started the quote, but ended the sentence, period, full stop, without including that clause and didn't indicate that he was paraphrasing or changing the quote. He just misquoted it. And we don't know whether he considered it or not. And I think... When an arbitrator quotes part of an article in the agreement, isn't he entitled to a presumption that he read the paragraph? No, he's not entitled to a presumption. No. It needs to be apparent from the decision that he did. And that has been... Don't we have cases that say we don't grade their opinion writing and things of that sort? You have cases where you say that if this was simply a case of bad contract interpretation, where the court would have interpreted the language differently than the arbitrator had, that you don't overturn the decision because the parties hired the arbitrator to interpret their agreement. And as long as it is apparent from the decision that that's what the arbitrator was doing, the decision stands. That cannot be said of this case. We think that the district court was correct to find that the arbitrator wholly omitted this phrase from his analysis. The words just don't appear anywhere in the decision. So we can't know how he would have interpreted it. I think what my colleague is trying to do in part in the arguments that the union has put forth in this case is offer to you an interpretation of what those words mean. They're positing a theory on what meaning the arbitrator might have meant to give to them or would have given them if he had actually considered them. But he didn't actually consider them. And so and the union doesn't cure that flaw in the arbitrator's analysis by offering it after the fact. The arbitrator took this definition, he rendered a new definition of elevator constructor and took that over to Article 13, which is entitled traveling time and expenses. And a review of the text of Article 13 plainly demonstrates that it presumes the existence of an employment relationship. And in fact, the arbitrator in the decision in the discussion section where he tries to describe what Article 13 stands for, not even the arbitrator who reached this determination was able to describe Article 13's provisions without using words that are inherent in an employment relationship, words like employer and employee and work. The arbitrator's erroneous definition then carried over to his interpretation of the local expense agreement. Under this collective bargaining agreement, the only travel time and expenses that are owed are those that are provided for in the local expense agreements. Like other local expense agreements throughout the country, this one contemplates expenses for travel by employees. And it uses that term many times. The arbitrator noted the many references in the local expense agreement to employees, but again ignored this limitation because he believed that the local expense agreement could not confer benefits on a more limited basis than the national agreement. Well, why shouldn't this be sent back to the arbitrator to make a decision as to when or if Thompson ever became an employee? The district court ordered that it be remanded back to the arbitrator. So I agree that it should. I would submit that the arbitrator's reasoning on the local expense agreement the place that it holds in this collective bargaining arrangement is not only flawed, but equally telling for what it says about his flawed reading of the agreement. What's our standard review on whether he read the LEA correctly? It's the same standard of review that applies to the collective bargaining agreement as a whole. Which is? He's entitled to extraordinary deference, but he is still bound to write an opinion that draws its essence from the agreement and act within the authority that the parties have given him. Which, in this contract, explicitly prohibits him from adding to, subtracting from, or modifying the agreement. I would note that when the arbitrator described his authority, he even misquoted that language from Article 15, Paragraph 7 of the agreement. He omitted the language that prohibited him from subtracting from the agreement. It appears on joint appendix page 342. And subtracting from this agreement is exactly what he did. How do we deal with the problem that whenever a party disagrees with the arbitrator's decision, the party can characterize the decision as adding something or subtracting something from the agreement? Because by definition, if you think the arbitrator gave more than he should have, then you're going to say he added something to the agreement. If we take that argument seriously, we're going to be doing de novo review of all these decisions. Because every time you say he got it wrong, he's added or subtracted. I guess I don't see it as having that sweeping of an implication. What's the limiting principle then? Whether it's apparent from the review of the language that the arbitrator actually considered all of the relevant language in the agreement. And frankly, Your Honor, there are any number of cases where that distinction between bad interpretation, which the court defers to, and a situation where the decision nullifies contract language. I acknowledge that it's often a blurry distinction. But in our view, this is not a tough call in this case, because it is apparent that the arbitrator simply ignored contract language. You can't say, here's the definition of dispositive language, and then quote only half of two parts of a sentence and end the quote. Well, that's because you think that language is part of the definition. But that's a disputed issue. I think the language has meaning. Exactly what meaning it deserves was up to the arbitrator. But he didn't even consider it. And that, under the George A. Hormel case, is the end of the analysis in a case where it is evident from a review of the decision that the arbitrator didn't even consider the language. I can see my time is short here, Your Honor, so I will wrap. In our view, this was an exercise in dispensing the arbitrator's own notion of industrial justice. Arbitrators are not permitted to ignore plain language of the contracts they are engaged to construe. Their awards must draw their essence from the agreement. And as this Court and the Supreme Court has said, where an arbitrator's words, quote, manifest an infidelity to this obligation, courts have no choice but to refuse enforcement. Thank you. Thank you, Mr. Copeland. Ms. Simon, your rebuttal. Thank you, Your Honors. Just a couple of very quick points. First, Mr. Copeland said that the arbitrator had not determined that Mr. Thompson had been hired by the parties. At the joint appendix, page 156, the arbitrator says, the grievance was a new hire apprentice. The arbitrator made that factual finding. Second, this Court has said, in the case of Stroh Container Corporation, as well as others, that there is no obligation for the arbitrator to spell out the reason for his decision or to write in a standard that satisfies the courts. You say page 156? 156. Joint appendix 156? 156, yes, Your Honor.  And to respond, finally, to Mr. Copeland's argument regarding the local expense agreement, the principal alternative claim that Kone focuses on is the language of the local expense agreement, which are negotiated in each local union to provide specific terms for paying expenses tailored to the conditions in that local area. Kone first wrongly claims that Article 13 of the collective bargaining agreement directs that travel time and travel expenses are both governed by local expense agreements in this case. This is wrong. When an elevator constructor is sent beyond the secondary jurisdiction, as occurred here, travel time is paid solely in accordance with Article 13, paragraph 1. Only travel expenses are paid in accordance with the local expense agreement. Second, Kone claims that the arbitrator ignored the local expense agreement's use of the term employee, but even the district court recognized that he did not ignore the term, stating, the arbitrator rejected plaintiff's argument regarding the use of the term employee in the local expense agreement. Specifically, the arbitrator held that the local expense agreement's use of the term employee cannot override the collective bargaining agreement because the source of the contractual right to travel time and expenses comes from Article 13, which creates the obligation on a national level and then directs the creation of the local agreements so that some of the details can be hashed out on a local basis. Having found that the collective bargaining agreement provides travel time and expenses to new hires under Alex Thompson's circumstances, he found that the local expense agreement did not, quote, override or limit the reach and scope of the unequivocal language of Article 13. I see my time is up. Thank you. Thank you, Ms. Simon. Thank you also, Mr. Copeland. The court appreciates you both coming and providing argument to the court to help us with the issues presented by this case. We will take it under advisement, render decision in due course. Thank you.